Nelson D. Donastorg, Plaintiff(s) *pro per*
452 Mohegan Avenue Parkway
Quaker Hill, CT 06375

**FILED**

UNITED STATES DISTRICT COURT 11: 42
FOR THE DISTRICT OF CONNECTICUT

:Case No. 3:10 CV 1052 (JBA)



**310CV 1057**

NELSON D. DONASTORG, *pro per*

:EMERGENCY MOTION

Plaintiff

VS:

:HOME FORECLOSURE

**AURORA LOANS SERVICNG, LLC**
an *ens legis* being used to conceal fraud;

:(REQUEST FOR EVIDENTIARY
HEARING AND ORDER TO SHOW
CAUSE CONCERNING DEFENDANTS'
FILING OF FALSE DOCUMENTS, INTO
A PUBLIC OFFICE)

**ROY BOWING** and/or his successor,
individually and in his official capacity as
**CFO of AURORA LOAN SERVICING,
LLC**

**JEFFREY KNICKERBOCKER** and/or his
successor, individually and in his official
capacity as ATTORNEY

**HUNT LEIBERT JACOBSON, P.C** and/or
his successor, individually and in
its official capacity as **President/CEO of
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.**, an *ens
legis* being used to conceal fraud; and
)
**JOHN DOES (Investors) 1-10,000**,

Assigned to the Hon. _____

Defendants.

---

THIS IS AN EMERGENCY MOTION AS THE SALE DATE IS MAY 5, 2010.

**Filed contemporaneously herewith is Plaintiff's Application for Temporary Restraining Order and Application for Temporary and Permanent Injunctive Relief to stay an imminent foreclosure sale on 5/5/2010**

COMES NOW, NELSON D. DONASTORG, Plaintiff *pro per*, and hereby sues Defendants for emergency injunctive and declaratory relief.

## I. PARTIES AND JURISDICTION

1. Nelson D. Donastorg is an individual of majority age who resides at 452 Mohegan Avenue Parkway, New London County, Connecticut ("Property"). This Court has personal jurisdiction over him.

Legal description:.........

2. Defendants jointly and/or separately (hereinafter "Defendants") are or were, at all material times hereto, "in charge of" foreign corporations whose corporate domicile and alleged authority to do business in the State of Connecticut is unknown and hereby questioned by Nelson D. Donastorg.

3. The John Doe Investor Defendants 1-10,000 are inclusive of other conspirators whose names are unknown to Nelson D. Donastorg, but may possibly also include any and all title companies and/or officers, notaries that are and/or were employees of Defendants' *ens legis*. and others.

4. This Court has personal jurisdiction over each of the Defendants as they have purposefully availed themselves of the privileges and benefits of conducting and engaging in doing business in Connecticut.

5. This Court has subject matter jurisdiction and venue because a substantial part of the events and omissions giving rise to Nelson D. Donastorg's claims occurred in New London, Connecticut, wherein he also seeks injunctive relief against these Defendants.

6. Defendants by and through their respective *ens legis* are used to conceal their fraud and/or criminal activity, issued securities which may or may not have been properly registered. These securities are form of either collateralized mortgage obligations (CMOs) or collateralized debt obligations (CDOs), or other form of exotic investment vehicle which may or may not be collateralized

in whole or in part by the subject Deed of Trust herein. The Certificate holders of the subject securities may or may not have an interest, in whole or in part, in the Deed of Trust and/or the Promissory Note, the subjects of action.

7. This Motion is being brought in accordance with the fraudulent acts committed by Defendants and pursuant to Connecticut ARTICLE 9* SECURED TRANSACTIONS Statutes, and other state and/or federal laws against all Defendants.

8. This action arises out of Defendants' fraudulent misrepresentations and omissions made to Nelson D. Donastorg.

9. Each of the named Defendants and/or their successor, individually and in their official capacity as President/CEO of their respective business entities, the *ens legis* being used to conceal fraud, were and/or are the decision makers for those entities and the persons that ordered the *ens* legis to defraud Nelson D. Donastorg.

10. Nelson D. Donastorg also enters into this Court's record the American Bar Association's opinion concerning foreclosures:

". . . . this Court has the responsibility to assure itself that the foreclosure plaintiffs have standing and that subject-matter-jurisdiction requirements are met at the time the complaint is filed. Even without the concerns raised by the documents the plaintiffs have filed, there is reason to question the existence of standing and the jurisdictional amount".

Over 30 cases are covered by the American Bar Association at:
http://www.abanet.org/rpte/publications/ereport/2008/3/Ohioforeclosures.pdf

11. Nelson D. Donastorg has no adequate remedy at law to redress the harm complained of. The sale of the his property, under the circumstances of record, is contrary to equity and good conscience in that such **sale is being instituted by parties who have no legal standing to institute or maintain the "Trustee sale,"** *ab initio*.

12. Scotus decisions conclusively and repeatedly declare that "fraud vitiates everything." Any and all contracts involving fraud are **void** *ab initio* (not just voidable).

13. Nelson D. Donastorg also enters into evidence in this Court's record the American Bar Association's opinion concerning foreclosures:

> ... this Court has the responsibility to assure itself that the foreclosure plaintiffs have standing and that subject-matter-jurisdiction requirements are met at the time the complaint is filed. Even without the concerns raised by the documents the plaintiffs have filed, there is reason to question the existence of standing and the jurisdictional amount.

Over 30 cases covered by the American Barr Association at:
http://www.abanet.org/rpte/publications/ereport/2008/3/Ohioforeclosures.pdf

14. Pursuant to Connecticut Rules of Civil Procedure; Nelson D. Donastorg (s) request an Order to Show Cause as to why Defendants have commenced a non-judicial foreclosure using fraudulent documents that have been unlawfully filed and/or recorded in the New London County Recorder's Office by Defendants.

15. Pursuant to Connecticut Rules of Civil Procedure, Nelson D. Donastorg requests this Court to order Defendants to cease and desist all actions, non-judicial and/or otherwise, against me until such a time as Defendants disprove all of the allegations set forth herein.

## II. MATERIAL FACTS AND ISSUES

16. Nelson D. Donastorg reaffirms and realleges the preceding paragraphs as if fully set forth herein below.

17. Nelson D. Donastorg sold to Defendants a Promissory Note.

18. Defendants altered said Promissory Note by stamping same "PAY TO THE ORDER OF ********** WITHOUT RECOURSE."

19. Defendants' act of altering the Promissory Note caused said Promissory Note to become a "check."

> The Federal Reserve Board defines a check as "a draft or order upon a bank or banking house purporting to be drawn upon a deposit of funds for the payment at all events of a certain sum of money to a certain person therein named or to him or his order or to bearer and payable instantly on demand." **It must contain the phrase "pay to the order of."** (Black's Law Dictionary, Sixth Ed.) (Emphasis added)

20. Defendants then resold the "check/Promissory Note", yet failed to pay Nelson D. Donastorg the money received from the sale of said check/Promissory Note.

21. The preceding events caused the sale of the Promissory Note to be completed and perfected.

22. Defendants then used "legalese" to trick Nelson D. Donastorg into believing Defendants were going to "loan" money to Nelson D. Donastorg, when in fact the money Defendants were actually claiming Defendants would "loan" Nelson D. Donastorg was the very same money Defendants received for selling Nelson D. Donastorg's check/Promissory Note.

23. Defendants then fraudulently claimed Defendants provided a "loan" equal to the amount of the check/Promissory Note to Nelson D. Donastorg.

24. However, Nelson D. Donastorg never received any "loan" from Defendants.

25. In fact, Nelson D. Donastorg did not receive the money from selling his Promissory Note to Defendants. Instead, Defendants gave said money to third parties.

26. Defendants used the money they received from the sale of Nelson D. Donastorg's check/Promissory Note to fraudulently encumber Nelson D. Donastorg real property by claiming said money paid to the third parties was Defendants' money.

27. Thus, Defendants' encumbrances on Nelson D. Donastorg real property are *prima facie* evidence of Defendants' fraud as it is a functional impossibility for the sum of the check/Promissory Note to be used twice against Nelson D. Donastorg.

28. Simply stated:

   a. Nelson D. Donastorg sold a Promissory Note to Defendants.

    b. Defendants then resold said Promissory Note, yet still failed to pay Nelson D. Donastorg.

    c. Defendants unlawfully used the money they should have paid Nelson D. Donastorg to purchase specific debts.

    d. Defendants purchased said debts in their name instead of Nelson D. Donastorg name(s).

    e. Defendants used said purchase to transfer the lien rights on Nelson D. Donastorg real property from the third party to Defendants.

        i) Defendants used Nelson D. Donastorg money to buy the lien under Defendants' name so as to put the lien in Defendants' name instead of removing said lien.

        ii) Such criminal act is fraudulent conversion.

    f. Defendants then unlawfully claimed encumbrances on Nelson D. Donastorg real property for the debts paid off in Defendants' name with Nelson D. Donastorg's money.

    g. Defendants then used 'legalese" to trick Nelson D. Donastorg into believing that Defendants had given Nelson D. Donastorg a "loan."

    h. Nelson D. Donastorg made monthly payments on said "loan" until such a time as Nelson D. Donastorg discovered material facts evidencing Defendants' fraudulent and criminal acts; Nelson D. Donastorg discovered that Defendants used the money from the sale of the Promissory Note, and *not* the money from a "loan" to pay off the aforementioned debts.

    j. It is a functional impossibility for the "loan" to have occurred as such would require the same exact money to be spent twice: once for the purchase of the liens and once to be given to Nelson D. Donastorg as a "loan."

        i) The purchase of the lien(s) did occur; therefore, the "loan" could not have occurred.

        ii) For the "loan" to occur, then the lien purchase by Defendants could not have occurred.

k. To date, Nelson D. Donastorg has *not* received the "loan" promised by Defendants.

l. Nelson D. Donastorg has been financially devastated by Defendants' failure to supply the "loan" Nelson D. Donastorg paid for several months and is still waiting to receive.

m. Defendants knowingly, intelligently and willfully created the previous scenario to defraud Nelson D. Donastorg and millions of other Americans in a far-reaching conspiracy to unlawfully steal land from Americans in the single largest act of conspiratory terrorism in the history of the world as evidenced by the man that created the concept almost one hundred years ago:

> "Capital must protect itself in every way . . . Debts must be collected and loans and mortgages foreclosed as soon as possible. When through a process of law the common people have lost their homes, they will be more tractable and more easily governed by the strong arm of the law applied by the central power of leading financiers. People without homes will not quarrel with their leaders. This is well known among our principle men now engaged in forming an imperialism of capitalism to govern the world. By dividing the people we can get them to expend their energies in fighting over questions of no importance to us except as teachers of the common herd."   J.P. Morgan, *circa* 1913.

29. The criminal and fraudulent attempt by Defendants to appear as the "Creditor" when Defendants, without lying, will never swear under oath to be the Creditor is also Defendants' confession to their criminal and fraudulent acts.

*See, Connecticut statute* ARTICLE 9* SECURED TRANSACTIONS.

Sale of chattels unaccompanied by change of possession as prima facie evidence of fraud against creditors and subsequent purchasers

    A. A sale made by a vendor of goods and chattels in his possession or under his control, or an assignment of goods and chattels, unless the sale or assignment is accompanied by an immediate delivery and followed by an actual and continued change of possession of the things sold or assigned, is prima facie evidence of fraud against creditors of the vendor, or creditors of the person making the assignment, or subsequent purchasers in good faith.

    B. The term "creditors" includes all persons who are creditors of the vendor or assignor at any time while such goods and chattels are in his possession or under his control.

30. To date, Nelson D. Donastorg has still **not received any money** from the sale of his Promissory Note to Defendants.

31. To date, Nelson D. Donastorg has not received the money promised by Defendants for the purported "loan" agreement, although Nelson D. Donastorg has made numerous monthly payments while waiting for the "loan" promised by Defendants.

32. Nelson D. Donastorg has/have paid a sum total of $ 64,600.00, inclusive of the down payment, closing costs, origination fees, other fees and 53,600.00 in monthly payments.

   a) 50 monthly payment at $1072.00 for a total of $53,600.00 to October 31, 2009

   b) Up front fees for a total of $S,000.00

   c) For a sum total certain of $61,600.00

33. Defendants then filed numerous forged, fraudulent and/or false documents into the New London County Recorder's Office. (*See* Exhibits)

34. Defendants committed numerous felonies against Nelson D. Donastorg and the State of Connecticut when they filed said forged, fraudulent, and/or false documents into the New London County Recorder's Office.

   *See,* **ARTICLE 3\* NEGOTIABLE INSTRUMENTS AND** A.R.S. § 39-161. Presentment of false instrument for filing;

   > A person who acknowledges, certifies, notarizes, procures or offers to be filed, registered or recorded in a public office in this state an instrument he knows to be false or forged, which, if genuine, could be filed, registered or recorded under any law of this state or the United States, or in compliance with established procedure is guilty of a class 6 felony. As used in this section "instrument" includes a written instrument as defined in §13-2001.

   *See also,* (Connecticut statute) **Rule 8.4 Misconduct**

. Definitions

   In this chapter, unless the context otherwise requires:

   3. "Complete written instrument" means a written instrument that purports to be genuine and fully drawn with respect to every essential feature.

5. "Falsely alters a written instrument" means to change a complete or incomplete written instrument, without the permission of anyone entitled to grant it, by means of counterfeiting, washing, erasure, obliteration, deletion, insertion of new matter, connecting together different parts of the whole of more than one genuine instrument or transposition of matter or in any other manner, so that the altered instrument falsely appears or purports to be in all respects an authentic creation of its ostensible maker or authorized by him.

6. "Falsely completes a written instrument" means to transform an incomplete written instrument into a complete one by adding, inserting or changing matter without the permission of anyone entitled to grant it, so that the complete written instrument falsely appears or purports to be in all respects an authentic creation of its ostensible maker or authorized by him.

7. "Falsely makes a written instrument" means to make or draw a complete or incomplete written instrument that purports to be an authentic creation of its ostensible maker but that is not either because the ostensible maker is fictitious, or because, if real, the ostensible maker did not authorize the making or drawing of the written instrument.

8. "Forged instrument" means a written instrument that has been falsely made, completed or altered.

9. "Incomplete written instrument" means a written instrument that contains some matter by way of content or authentication but that requires additional matter to render it a complete written instrument.

12. "Written instrument" means either:

   (a) Any paper, document or other instrument that contains written or printed matter or its equivalent.

   (b) Any token, stamp, seal, badge, trademark, graphical image, access device or other evidence or symbol of value, right, privilege or identification.

See also: CONNECTICUT **PENAL CODE** 53-390 AND A.R.S. § 13-1001.

Attempt; classifications

A. A person commits attempt if, acting with the kind of culpability otherwise required for commission of an offense, such person:

B. It is no defense that it was impossible for the person to aid the other party's commission of the offense, provided such person could have done so had the circumstances been as he believed them to be.

35. Defendants, then unlawfully commenced a non-judicial foreclosure proceeding against Nelson D. Donastorg utilizing said fraudulent documents in furtherance of their felonious acts.

36. There is no basis and/or foundation in law to commence a non-judicial foreclosure proceeding using fraudulent, forged and/or false documents.

37. Numerous courts have previously decided that filing false documents in a County Recorder's Office to steal land is a "terrorist act."

38. Defendants *must* either fulfill the requirement of supplying the amount of money as agreed upon in the Deed of Trust for the purported **loan**; *or* **reimburse**.Nelson D. Donastorg **all money** given to Defendants to obtain said purported **loan**.

39. On or about August 9, 2005, Nelson D. Donastorg as a consumer defined under Title 44 of the Connecticut Revised Statutes did enter into a Deed of Trust agreement of real property in good faith with Defendants.

40. Defendants used misleading" legalese" in the Deed of Trust documents as a means of converting real property from its true owner to themselves without Nelson D. Donastorg comprehension and therefore *without his understanding*.

41. Nelson D. Donastorg sought to purchase a home. He was a consumer in relation to all parties who wished to benefit from that transaction, including Defendants, who allegedly provided financing for the purchase of the home.

42. On or about October, 2009, Nelson D. Donastorg began to question the extent of the fraudulent and/or criminal activities of financial intuitions. At that time, He began to research the Promissory Note and Deed of Trust affiliated with the real property herein and discovered the following;

    (a) banking law states a bank cannot loan "credit",

    (b) the bank had no financial interest at risk in the note,

    (c) the bank monetized Nelson D. Donastorg signature ,

    (d) the Bank securitized Nelson D. Donastorg Promissory Note,

    (e) the Defendants do not lawfully own a security interest in the real property,

(f) the original/genuine Promissory Note and original/genuine Deed of Trust are to be maintained "together" in good and valid condition. Independently they are null and void of value, because the Promissory Note evidences the underlying debt secured by the Deed of Trust.

43. The Deed of Trust states, on page 2 paragraph G "this is a loan as evidenced by the Promissory Note". Yet, the Promissory Note has been *sold* by Nelson D. Donastorg to Defendants, wherein Defendants "cashed" and/or "monetized" the Promissory Note who then gave the cash, received by Defendants, for sale of said Promissory Note to a third party. The cash thereby completed and perfected the sale of the Promissory Note.

44. Accordingly, since the Promissory Note was resold by Defendants, the Promissory Note is no longer or has never been attached to the Deed of Trust and thus cannot "evidence" any aspect of the Deed of Trust.

45. Therefore, the Deed of Trust, absent its required evidence, is invalid as a claim and as a contract against Nelson D. Donastorg.

46. In fact, the Deed of Trust *only* evidences the fact that Nelson D. Donastorg has kept the promise to pay monthly on a purported "loan" in which Defendants have failed to uphold their requirement under the purported loan by not presenting the amount stated in the Deed of Trust to him.

47. Simply stated, Nelson D. Donastorg has been making the monthly payments and stopped once it was evident Defendants would remain in *dishonor in not* fulfilling their part of the purported agreement by issuing the loan.

48. Nelson D. Donastorg researched the New London County records for the original Promissory Note, Instrument No. 0035930650, and found assignments from Defendant Lehman Brothers to Defendant Aurora Loan Servicing, with no record of any further assignments containing original note #0035930650 to Defendants.

49. Upon information and belief, Defendants are unlawfully and deceptively proceeding to foreclose and sell Nelson D. Donastorg's real property without providing Proof of Claim that they are

the **true Creditor** and/or **Holder in due Course,** by exhibiting the *genuine original* Documents with the Allonge proving Standing to foreclose on Nelson D. Donastorg 's real property.

50.     Nelson D. Donastorg discovered the forged, fraudulent and/or false documents Defendants filed and/or recorded in the New London County Recorder's Office as contained in the Forensic Examination of the purported agreement . (Exhibits ___)

51.     Nelson D. Donastorg has demanded Defendants *exhibit the original instrument* in accordance with, *inter alia*, U.C.C. § 3-501(B)(12), inclusive of the *genuine original Promissory Note and genuine original allonge* showing chain of title, also inclusive of the following forms and OMB numbers of the forms to show the record of financial interest in the Promissory Note:

(a) Federal Reserve form S3 registration statement,

(b) Federal Reserve form 424(b)(5) prospectus,

(c) Federal Reserve form FR 2046 balance sheet(s),

(d) Federal Reserve form FR 2049 balance sheet(s),

(e) Federal Reserve form 2099 balance sheet(s),

(f) Title page to the Deed of Trust.

52.     Defendants misrepresented to Nelson D. Donastorg the scope of the *original agreement* dated August 09, 2005 and violated the good faith agreements with Nelson D. Donastorg by the following:

a.      Failing to maintain the Deed of Trust together with the *genuine original* Promissory Note.

b.      Falsely claiming to be or represent the Holder in Due Course and/or Holder.

c.      Deceptively representing themselves as the Creditor and/or Holder in Due Course of the true debt instruments.

d.      Unconscionably proceeding to non-judicially foreclose on said real property without Proof of Claim to establish standing to do so.

  e. Causing confusion to Nelson D. Donastorg by not notifying Nelson D. Donastorg of any and all transfers or assignments of said Deed of Trust and/or Promissory Note.

  f. Falsely continuing to act as though they are the Creditor and Holder in Due Course and, therefore, have failed to state a claim wherein relief may be granted in accordance with F.R.Civ.P., Rule 12(b)(6).

53. Nelson D. Donastorg has inquired with the Defendants to confirm that Defendants are the Real Party in Interest. Pursuant to, *inter alia*, Rule 17(a), Defendants must prove they are the Real Party in Interest, not just claim such. The Defendants have failed to disclose the requested information.

54. Upon information and belief, Defendants are a "Fictitious Payee." Moreover, the Defendants are *not* the Creditor, or a lawful Assignee of the Creditor, in this case.

55. Further, immediate action is necessary because Nelson D. Donastorg has no adequate remedy at law. Based on these facts, Nelson D. Donastorg believes that the Defendants' deceptive actions will deprive Nelson D. Donastorg of his rights to Due Process of Law.

### III. CAUSES OF ACTION PURSUANT TO TITLE 52* CIVIL ACTIONS

56. Nelson D. Donastorg reaffirms and realleges the preceding paragraphs as if fully set forth herein below.

57. Most states' deceptive trade practices statutes include broad restrictions on "deceptive" or "unfair" trade practices. These states often include prohibitions against *fraudulent and unconscionable practices*. The Federal Trade Commission, when interpreting the FTCA, does not require the person committing an act of deception to have the intent to deceive. Moreover, the FTC does not require that actual deception occur. The FTC merely requires that a party have the capacity to deceive or commit an unfair trade practice. If a business or individual has this capacity or tendency to

deceive, the FTC under the FTCA may order the company to cease and desist the deceptive or unfair practice. Connecticut statutes similarly do not require that a company specifically intend to deceive, nor must a company always have knowledge that a statement is false to be liable for misrepresentations made to a consumer.

58. There are two main purposes of the statutes providing remedies for businesses engaging in unlawful activity: (1) injunctions or restraining orders forbidding the continued deceptive trade practice, and (2) punishment via fines, damages, and imprisonment. Because businesses are generally in violation of deceptive trade practice laws and because it is difficult to determine whom to punish in the violating business, fines are generally the most effective method of extracting restitution.

59. Defendants can be sued under Conn. Gen. Stat. § 52-552f

60. All Defendants are liable pursuant to Conn. Gen. Stat. § **Sec. 52-552i.**

61. The statute of limitations has not expired pursuant to Conn. Gen. Stat. § **Sec. 52-552j** as Nelson D. Donastorg just recently discovered the fraud committed by Defendants.

62. Defendants violated **TITLE 52\* CIVIL ACTIONS**

when they:

(a) Engaged in false, misleading or deceptive acts or practices that Nelson D. Donastorg relied on to his detriment. Specifically, Defendants caused confusion or misunderstanding as to the source of the funding, having no financial risk in the transaction.

(b) Failing to disclose information which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed. Defendants did not disclose the method by which the Note would be sold and monetized, and the Deed securitized.

(c) Engaged in an unconscionable action or course of action that, to Nelson D. Donastorg's detriment that took advantage of his lack of knowledge and experience to a grossly unfair degree. Specifically, Defendants initiated foreclosure on real property knowingly, without being, stating, and/or evidencing they were in fact the Holder in Due Course with standing to foreclose.

63. Nelson D. Donastorg requested all appropriate documentation from Defendants, including written correspondences. (Exhibits  ).

64. Defendants' wrongful conduct will result in Nelson D. Donastorg's Right to Due Process of Law being negated and unlawfully placing a cloud on the title to the real property.

## IV. CONDITIONS PRECEDENT

65. Nelson D. Donastorg reaffirms and realleges the preceding paragraphs as if set forth in their entirety herein below.

66. All conditions precedent to Nelson D. Donastorg's claim for relief have been performed or have occurred.

## V. REQUEST FOR DISCLOSURE

67. Nelson D. Donastorg (s) reaffirms and realleges the previous paragraphs as if fully set forth herein below.

68. Pursuant to Connecticut Rules of Civil Procedure Nelson D. Donastorg requests that Defendants disclose within 10 days of the service of this request, the information or material evidencing Defendants *prima facie* case or acknowledge they have no right to argue against Nelson D. Donastorg demands in this matter.

69. It is likely that Nelson D. Donastorg will recover from Defendants after trial on the merits set forth herein.

WHEREFORE, Nelson D. Donastorg respectfully requests this Court:

## CERTIFICATE OF SERVICE

ORIGINAL for filing and COPY delivered to the Court and Judge this 6th day of July, in the year of Our Lord, 2010.

COPIES served by Notary Presentment upon:

AURORA LAON SERVICES, LLC.
2617 COLLEGE PARK DRIVE
SCOTTSBLUFF, NE 69361

&

ROY BOWING
CHIEF FINANCIAL OFFICER
AUFORA LOAN SERVICES
10350 PK MEADOWS DRIVE
LITTLETON, CO. 80124

&

JEFFREY M. KNICKERBOCKER, ESQ.
JURIS NUMBER 101589
HUNT LEIBERT JACOBSON, PC
50 WESTON STREET
HARTFORD, CT 06120

&

HUNT LEIBERT JACOBSON, PC
50 WESTON STREET
HARTFORD, CT 06120

Nelson D. Dongstorg, Plaintiff *pro per*
(Signed reserving all my rights under U. C.C. §1-308)

RICHARD J. GILLICH
*NOTARY PUBLIC*
MY COMMISSION EXPIRES 1/31/2015

A.   Immediately take jurisdiction of this matter and enter an Order for an evidentiary/show cause hearing concerning Defendants' filing of false documents into public office (in conjunction with his Applications for Restraining Order and Preliminary Injunction filed concurrently herewith seeking temporary and permanent injunctive relief to expressly preclude and cancel the "Trustee sale" presently scheduled for Not Yet specified).

B.   That Defendants at said hearing prove they have legal standing to institute or maintain said "trustee sale".

C.   For any other and further relief which the Court deems just and proper.

RESPECTFULLY SUBMITTED this 5th day of July, 2010.

_____
Nelson D. Donastorg, Plaintiff *pro per*

## VERIFIED STATEMENT

Nelson D. Donastorg, Plaintiffs *pro per*, verifies that he is competent to state as to the matters set forth herein and has first-hand knowledge thereof, and attests that to the best of his knowledge and belief, such facts are true, correct and complete to the best of his knowledge and belief, admissible as evidence, and if called upon as a witness, he will testify to their veracity.

_____
Nelson D. Donastorg, Plaintiff *pro per*
(Signed reserving all my rights under U.C.C. §1-308)

RICHARD J. GILLICH
NOTARY PUBLIC
MY COMMISSION EXPIRES 1/31/2015